IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Parental Rights to | ) | |
| | ) | No. 34484-3-III |
| M.A.S. | ) | (consolidated with No. 34486-0-III, |
| | ) | No. 34485-1-III) |
| _____ | ) | |
| | ) | |
| In re the Parental Rights to | ) | UNPUBLISHED OPINION |
| | ) | |
| I.L.S. | ) | |
| _____ | ) | |
| | ) | |
| In re the Parental Rights to | ) | |
| | ) | |
| R.S. | ) | |

SIDDOWAY, J. — The petitioning mother seeks to revoke her April 2014 relinquishment of parental rights to three children, based on a claim of fraud first asserted almost two years later. RCW 26.33.160 forecloses relief. We affirm the dismissal of her petitions.

No. 34484-3-III (consolidated with No. 34486-0-III; No. 34485-1-III)
*In re Parental Rights to M.A.S.*

FACTS AND PROCEDURAL BACKGROUND

The petitioner is the biological mother of three children whose future is at issue in this appeal. In July 2012, the Department of Social and Health Services (Department) filed dependency proceedings as to all three children. At the time, the oldest child, a daughter, was seven, the middle child, also a daughter, was three and a half, and the youngest, a son, was two. The juvenile court entered an order of dependency in October 2012.

Over a year later, in December 2013, the Department filed petitions to terminate the mother's and father's parental rights. By that time, the children were ages eight and a half, nearly five, and three. All three children were residing in the same foster home, and their permanency plan called for adoption by the foster parents.

Almost five months later, on April 24, 2014, the mother, represented by counsel, relinquished her rights to all three children and consented to their adoption. The children's father did as well. The consent documents that the mother signed three times—one for each child—included strongly-worded acknowledgments of the permanent effect of her action and that her decision was "an extremely important one" that would provide the basis for an order "permanently terminating all of [her] parental rights to the child," meaning that it would "take from [her] all legal rights and obligations with respect to the child." Clerk's Papers (CP) at 27, 116, 209.

2

No. 34484-3-III (consolidated with No. 34486-0-III; No. 34485-1-III)
*In re Parental Rights to M.A.S.*

The documents spelled out her extremely limited opportunity to change her mind, stating:

7.  This Consent is given subject to the approval of the Superior Court of the State of Washington and it is to have no force or effect until approved by the Court and will not be presented to the Court until a minimum of forty-eight (48) hours after it is signed. . . .

8.  I understand that this Consent is revocable by me at any time prior to approval by the Court. I also understand that if I wish to revoke my Consent, I must revoke it in one of the following ways:

    i)  Written revocation may be delivered or mailed to the Clerk of the Court before approval of the Consent by the Court.

    ii) [Wr]itten revocation may be delivered or mailed to the Clerk of the Court after approval, but only if it is delivered or mailed within forty-eight (48) hours after a prior notice of revocation that was given within forty-eight (48) hours after the birth of the child. The prior notice of revocation must be given to the agency or person who sought the Consent and may be either oral or written.

. . . .

10. I understand that <u>after this Consent is approved by the Court, it is not revocable except for fraud or duress</u> practiced by the person, department or agency requesting the Consent <u>or for lack of mental competency</u> at the time the Consent was executed by me <u>and under no circumstances later than one year after it is approved by the Court</u>.

CP at 27-28, 116-17, 209-10 (emphasis added). Finally, the three documents signed by the mother stated that her consent was "given freely, voluntarily and with full knowledge of the consequences and the Consent is not the result of fraud or duress, nor am I acting under the influence of anyone." CP at 28, 117, 210. Approximately two

3

weeks after the mother executed her consents, the juvenile court signed orders

terminating the mother's parental rights to the three children.

The children's adoption was delayed by a contract dispute between the

Department and a home study evaluator and thereafter by a petition for nonparental

custody filed by the children's maternal grandmother. *See In re Custody of M.S., I.S.,*

*and R.S.*, No. 33132-6-III, slip op. at pp. 3-4 (Wash. Ct. App. June 14, 2016)

(unpublished), https://www.courts.wa.gov/opinions/pdf/331326.unp.pdf. The trial court

dismissed the grandmother's petition and this court affirmed the dismissal in June 2016.

*See id.* An untimely petition for discretionary review was dismissed by the Washington

Supreme Court in February of this year. *In re Custody of M.S.*, 187 Wn.2d 1010 (2017).

Meanwhile, in March 2016, the mother, acting pro se, filed the petitions to

reinstate her parental rights to the three children that are the subject matter of this appeal.

She employed a juvenile court petition form that is to be used when a child seeks

reinstatement of terminated parental rights under RCW 13.34.215.[1] She asserted that she

was requesting reinstatement of her parental rights "because my civil rights were violated

within my 4th and 14th [A]mendments, also I was falsely accused of doing

---

[1] RCW 13.34.215 authorizes a petition by "[a] child . . . to reinstate the previously terminated parental rights of his or her parent" under certain circumstances. It has no application in this case.

4

methamphetamines and threatened into signing over my parental rights." CP at 37, 131, 219. Both the Department and the children's lawyer opposed the petitions.

At a hearing on the petitions that took place in May 2016, the mother appeared pro se. The only information she offered that appeared related to the timing of her petitions was her report to the court that she had found out "recently" that the biological father of the children had been allowed to have contact with them a year earlier, "even after signing over his rights." Report of Proceedings (RP) at 6. She told the court that she, too, "really want[ed] to see my kids and have contact with them" but the foster parents—the prospective adoptive parents—"told [her] no." *Id.*

Invited to elaborate on the basis for her Fourth and Fourteenth Amendment claims, the mother told the court:

> When I met with [the caseworker] and [my attorney] on April 24th, they told me that if I came to court it would be a closed adoption and I would never see my kids again. But if I signed over my rights they would make it an open adoption, and I, after a year, I would be able to have contact with my kids again.

RP at 7. And even though she claimed to have been given these assurances, she claimed to have also tried to revoke her consent immediately but was told by her lawyer that she could not:

> When I signed over my rights, I called the very next morning saying I didn't want to sign over my rights, and my attorney at the time told me it was too late.

5

RP at 5. These representations were unsupported by any sworn declaration of the mother, let alone any declaration from her former lawyer or the Department lawyer who allegedly misled her.

After giving the mother an opportunity to explain why she believed she was entitled to revoke her relinquishment of rights, the trial court stated it did not see any remedy available to her and orally denied her petitions. In written findings and an order entered thereafter, the trial court found that the mother had provided no factual basis to support her claims of fraud or duress, that the time to request a reinstatement under RCW 26.33.160 had long passed, and that reinstatement was not in the children's best interest.

The mother appeals.

## ANALYSIS

Represented by counsel in this appeal, the mother makes two arguments: first, that it was error for the trial court to fail to appoint counsel to represent her in the proceedings below, and second, that she was entitled to rely on the more forgiving limitations periods provided by RCW 4.16.080(4) and CR 60(b) rather than being foreclosed by the one-year limitation period provided by RCW 26.33.160. We reject both arguments.[2]

---

[2] The children's attorney argues that the mother's arguments are meritless and warrant sanctions. A commissioner of our court ordered that counsel be appointed for the mother in this appeal. We recognize the challenges sometimes faced by counsel appointed to represent parents in dependency and termination proceedings. We find nothing approaching sanctionable conduct by the mother's attorney.

6

No. 34484-3-III (consolidated with No. 34486-0-III; No. 34485-1-III)
*In re Parental Rights to M.A.S.*

## *Appointment of counsel*

The mother argues for the first time on appeal that her statutory and constitutional rights were violated when the trial court failed to appoint counsel to represent her in the proceedings below. She argues that although she chose to enter into a voluntary termination, because it was the Department that initiated the dependency and termination proceedings, her petitions were a stage of "'a proceeding in which a child is alleged to be dependent,'" which entitles her to counsel. Br. of Appellant at 9 (quoting RCW 13.34.090(2).

RCW 13.34.090(2) provides:

At all stages of a proceeding in which a child is alleged to be dependent, the child's parent, guardian, or legal custodian has the right to be represented by counsel, and if indigent, to have counsel appointed for him or her by the court. Unless waived in court, counsel shall be provided to the child's parent, guardian, or legal custodian, if such person (a) has appeared in the proceeding or requested the court to appoint counsel and (b) is financially unable to obtain counsel because of indigency.

Because this right to counsel has been held by Washington courts to be rooted in the due process clause of the Washington Constitution and the Fourteenth Amendment to the United States Constitution, *see In re Dependency of G.G.*, 185 Wn. App. 813, 826, 344 P.3d 234 (2015), the mother argues that this assignment of error implicates an issue of constitutional dimension. She treats it as appealable even though not raised in the trial court. *See* RAP 2.5(a)(3) (exception to error preservation requirement for manifest errors affecting a constitutional right).

7

In this case, however, the three children were not alleged to be dependent at any stage of the mother's pursuit of her petitions. The termination proceedings had been completed nearly two years earlier. RCW 13.34.090 does not apply and the mother identifies no other authority supporting a parent's right to counsel in an action to revoke a relinquishment of parental rights. We will not consider this unpreserved error further.

### *RCW 26.33.160 as a bar*

The mother also challenges the trial court's determination that RCW 26.33.160 barred her request for relief, arguing that as a victim of fraud she was entitled to proceed under the general statute of limitations applicable to civil fraud, RCW 4.16.080(4), or under CR 60(b). She contends her petitions were timely under both.

RCW 26.33.160(3), entitled "Consent to adoption—When revocable—Procedure," requires that a parent provide written consent to her child's adoption, dictates matters that must be disclosed in a valid consent, and recognizes a short-term, limited right of a parent to revoke that consent. Relevant here, it states:

> Except as provided in subsections (2)(b) and (4)(h) of this section and in this subsection, a consent to adoption may not be revoked after it has been approved by the court. Within one year after approval, a consent may be revoked for fraud or duress practiced by the person, department, or agency requesting the consent, or for lack of mental competency on the part of the person giving the consent at the time the consent was given. A written consent to adoption may not be revoked more than one year after it is approved by the court.

8

Neither subsections (2)(b) or (4)(h) of the statute[3] apply to the mother in this case.

Under RCW 4.16.080(4), a party has three years to commence "[a]n action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." But that statute is qualified by an earlier provision of chapter 4.16 RCW, RCW 4.16.005, which states, "Except as otherwise provided in this chapter, *and except when in special cases a different limitation is prescribed by a statute not contained in this chapter*, actions can only be commenced within the periods provided in this chapter after the cause of action has accrued." RCW 26.33.160 imposes such a different limitation in the special case of fraud or duress practiced in procuring a relinquishment of parental rights.

The mother also makes a "public policy" argument for applying the general civil statute of limitations that fails based on the plain language of RCW 4.16.005. We also adopt Division One's explanation for rejecting the same argument in an unpublished 2000 decision:

> [W]hatever merit [the mother's] policy argument may have is counterbalanced by an argument at least equally compelling—the purpose of the adoption statutes is to provide for the best interests of the child. This requires finality in the adoption process. If the discovery rule applied, such finality could never be achieved. An allegation of recently discovered fraud could be brought at any time until the child became an adult. Given

---

[3] Those subsections of the statute deal with renewal of a revocation that was given within 48 hours after the birth of a child and with special revocation rights applicable to Indian children under federal law.

9

> the emotional cauldron of post-relinquishment regret, such allegations would likely be frequent. The legislature has made the policy choice in favor of finality. It is not for the court to substitute its judgment for that of the legislature.

*In re Dependency of D.T.*, noted at 100 Wn. App. 1031, 2000 WL 426459, at \*3 (2000).

For similar reasons, we find that CR 60(b) cannot apply. Under CR 81(a), the Superior Court Civil Rules apply to proceedings "[e]xcept where inconsistent with rules or statutes applicable to special proceedings." "[S]pecial proceedings" within the meaning of the rule have been described as "those proceedings created or completely transformed by the legislature," including "actions unknown to common law . . . as well as those where the legislature has exercised its police power and entirely changed the remedies available." *Putman v. Wenatchee Valley Med. Ctr., P.S.*, 166 Wn.2d 974, 982, 216 P.3d 374 (2009). The parties do not address CR 81(a) or whether proceedings to terminate parental rights and for adoption are special proceedings, so we do not have the benefit of briefing on this issue. But as observed by our state supreme court in 1895, "Adoption was not known to the common law, and is a matter purely statutory. Courts have passed upon this question frequently, and have adhered with much strictness to this rule." *In re Renton's Estate*, 10 Wash. 533, 542, 39 P. 145 (1895) (citing cases). Our review of the handful of Washington decisions that have applied CR 60(b) to motions in the parental rights relinquishment or adoption contexts reveals that they have done so where the rule's application would not be inconsistent with applicable statutes. Here,

10

No. 34484-3-III (consolidated with No. 34486-0-III; No. 34485-1-III)
*In re Parental Rights to M.A.S.*

however, applying CR 60(b) to extend the time for revoking a relinquishment of parental rights to a "reasonable time" beyond one year would be inconsistent with RCW 26.33.160. We hold that CR 60(b) does not apply.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Pennell, J.

11